IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CONNOR G., <br><br> Plaintiff, <br><br> v. <br><br> MARTIN J. O'MALLEY, Commissioner of Social Security, <br><br> Defendant. | MEMORANDUM DECISION AND ORDER <br><br><br> Case #4:23-cv-00075-PK <br><br> Magistrate Judge Paul Kohler |

This matter comes before the Court on Plaintiff Connor G.'s appeal from the decision of the Social Security Administration denying his application for disability insurance benefits and supplemental security income.[1] The Court affirms the administrative ruling.

I.  STANDARD OF REVIEW

This Court's review of the administrative law judge's ("ALJ") decision is limited to determining whether the findings are supported by substantial evidence and whether the correct legal standards were applied.[2] "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[3] The ALJ is required to consider all of the evidence, although the ALJ is not required to discuss all of the evidence.[4] If supported by substantial evidence, the Commissioner's findings are conclusive and must be

---

[1] Docket No. 10.

[2] *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[3] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

[4] *Id.* at 1009–10.

affirmed.[5] The Court must evaluate the record as a whole, including the evidence before the ALJ that detracts from the weight of the ALJ's decision.[6] However, the reviewing court should not re-weigh the evidence or substitute its judgment for that of the Commissioner.[7]

## II. BACKGROUND

A.   PROCEDURAL HISTORY

In August 2021, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging disability beginning on September 30, 2018.[8] The claim was denied initially and on reconsideration.[9] Plaintiff then requested a hearing before an ALJ,[10] which was held on February 14, 2023.[11] On March 1, 2023, the ALJ found that Plaintiff was not disabled.[12] The Appeals Council denied review on August 18, 2023,[13] making the ALJ's decision the Commissioner's final decision for purposes of judicial review.[14]

On September 22, 2023, Plaintiff filed his complaint in this case.[15] On October 10, 2023, both parties consented to a United States Magistrate Judge conducting all proceedings in the case, including entry of final judgment, with appeal to the United States Court of Appeals for the

---

[5] *Richardson*, 402 U.S. at 390.

[6] *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[7] *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).

[8] R. at 225–33.

[9] *Id*. at 101–08, 116–21.

[10] *Id*. at 122–23.

[11] *Id.* at 47–62.

[12] *Id.* at 14–38.

[13] *Id.* at 1–6.

[14] 20 C.F.R. §§ 416.1481, 422.210(a).

[15] Docket No. 1.

Tenth Circuit.[16] The Commissioner filed an answer and the administrative record on November 17, 2023.[17]

Plaintiff filed his Opening Brief on December 18, 2023.[18] The Commissioner's Answer Brief was filed on March 12, 2024.[19] Plaintiff filed his Reply Brief on March 26, 2024.[20]

B.  MEDICAL EVIDENCE

Plaintiff sought benefits based on autism, attention deficit hyperactivity disorder ("ADHD"), attention deficit disorder ("ADD"), anxiety, depression, dyslexia, learning disabilities, speech problems, and expressive language.[21] Plaintiff began therapy with Southwest Behavioral Health Center in July 2014.[22] Treatment notes reflect incremental progress,[23] becoming more comfortable with other group members and staff,[24] and getting better at staying on task.[25] Plaintiff's mother stated that she was happy with his treatment and it was noted that Plaintiff was a great example to others in the group.[26]

---

[16] Docket No. 8.
[17] Docket No. 9.
[18] Docket No. 10.
[19] Docket No. 17.
[20] Docket No. 18.
[21] R. at 249.
[22] *Id.* at 600–81.
[23] *Id.* at 620, 631.
[24] *Id.* at 625, 657.
[25] *Id.* at 644, 651, 659, 671.
[26] *Id.* at 652, 659, 671.

In November 2019, Plaintiff was seen by A. Kyle Elder, Ph.D., for a psychological evaluation.[27] During their meeting, Plaintiff told Dr. Elder that he loves mountain biking and going snowboarding. Plaintiff indicated that he was good at math, science, sports, and gaming. Plaintiff was oriented and cooperative, though his hygiene level was less than average. Dr. Elder assessments showed that Plaintiff's cognitive abilities were generally in the average to low average range. Dr. Elder diagnosed Plaintiff with autism spectrum disorder, persistent depressive disorder, and specific learning disability with impairment in reading comprehension and math fluency.

In April 2022, Plaintiff underwent a consultative evaluation with Kent Rosengren, Psy.D.[28] Dr. Rosenberg noted that Plaintiff was personable and easygoing, and that he was open, engaged, and cooperative. Plaintiff's grooming and hygiene were appropriate and, while initially anxious, he quickly warmed up. Plaintiff reported that he likes doing things outdoors, such as fishing, snowboarding, mountain biking, climbing, and hiking, and likes video games. Plaintiff reported that he was not taking any medication and had not seen a doctor in three years, though he recently started seeing a therapist. Plaintiff expressed his belief that his main obstacle to getting a job "is the anxiety about putting himself out there and dealing with people."[29]

Dr. Rosengren diagnosed Plaintiff with autism spectrum disorder, ADHD, unspecified anxiety disorder, and unspecified depressive disorder. Dr. Rosengren opined that Plaintiff had minimal limitations in his ability to understand, carry out, and remember simple, one step

---

[27] *Id.* at 579–92.
[28] *Id.* at 593–99.
[29] *Id.* at 596.

instructions; moderate limitations to work with complex, multi-step instructions; moderate limitations in his ability to focus and concentrate; marked limitations in his ability to persist in work-related activities at a reasonable pace; moderate limitations in maintaining effective social interactions with others, including supervisors, coworkers, and the public; and marked limitations in his ability to deal with and adapt to the normal pressures of a competitive work environment.

In early 2022, Plaintiff completed a function report.[30] Plaintiff reported the ability to dress, bathe, feed himself, and use the toilet without problem. However, he stated that he sometimes forgets to wash his hair and that his mother cuts his hair and beard. Plaintiff stated that he could cook simple things but sometimes burns things. Plaintiff cleans, does laundry, and takes out the trash, though he needs reminders to do these tasks. Plaintiff identified video games, music, mountain biking, and snowboarding as hobbies, but stated that he doesn't do them often. Plaintiff stated that he attends weekly therapy sessions and goes shopping with his mother two or three times per month. Plaintiff stated difficulty with memory but stated that he could generally finish something he starts and can follow written instructions well. He further stated that he handles stress "alright, better than average,"[31] but does not handle changes in routine well.

On February 6, 2023, David Oakden, LCSW, Plaintiff's therapist, submitted a letter on his behalf.[32] Mr. Oakden stated that Plaintiff was unable to budget effectively, had difficulty completing activities of daily living without prompting, and struggled to maintain a consistent

---

[30] *Id.* at 257–64.
[31] *Id.* at 263.
[32] *Id.* at 682.

5

work schedule. Mr. Oakden stated that Plaintiff was not at an age-appropriate level for many life skills, which was concerning given his age, and that his prognosis was guarded.

Plaintiff testified at the hearing before the ALJ.[33] Plaintiff testified that he graduated high school and received an associate degree, but that he received special accommodations for both. Plaintiff stated that he worked part-time at a grocery store as a courtesy clerk, which involved bagging groceries, taking them to customer's cars, and cleaning bathrooms. Plaintiff stated that he worked three five-hour shifts and that he needs a break in between shifts. He also stated that he needs reminders and that his employer is lenient with him. When not working, Plaintiff stated that he largely stays in his room with the door closed.

C.     THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's claim. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since September 30, 2018, the alleged onset date.[34] At step two, the ALJ found that Plaintiff suffered from the following severe impairments: autism, ADHD, unspecified anxiety disorder, unspecified depressive disorder, and a learning disorder.[35] At step three, the ALJ found that Plaintiff did not meet or equal a listed impairment.[36] At step four, the ALJ concluded that

---

[33] *Id.* at 47–62.
[34] *Id.* at 19–20.
[35] *Id.* at 20.
[36] *Id.* at 20–25.

Plaintiff had no past relevant work.[37] At step five, the ALJ found that there were jobs that exist in significant numbers that Plaintiff could perform and, therefore, he was not disabled.[38]

### III. DISCUSSION

Plaintiff raises two issues in his brief: (1) whether the ALJ failed to properly evaluate the severity of Plaintiff's mental impairments; and (2) whether the ALJ erred in his evaluation of the medical opinion evidence.

A.    MENTAL LIMITATIONS

When considering a claimant's mental impairments, the ALJ is required to follow a specific technique for evaluating the severity of those impairments and their effect on the claimant's ability to work.[39] Under that technique, the ALJ must first determine whether the claimant has a medically determinable mental impairment.[40] If the claimant does have such an impairment, the ALJ must then consider the degree of functional limitation resulting from the impairment in four broad functional categories: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.[41] The regulations provide a scale to rate the degree of functional limitation in these areas.[42] Those ratings are then used at steps two and three of the

---

[37] *Id.* at 33.
[38] *Id.* at 33–34.
[39] 20 C.F.R. § 404.1520a(a).
[40] *Id.* § 404.1520a(b)(1).
[41] *Id.* § 404.1520a(b)(2), (c)(3).
[42] *Id.* § 404.1520a(c)(4).

sequential process.[43] The ALJ's decision "must include a specific finding as to the degree of limitation in each of the functional areas" and "incorporate the pertinent findings and conclusions."[44]

Here, the ALJ found that Plaintiff had moderate limitations in all four functional categories. With respect to understanding, remembering, or applying information, the ALJ noted that Plaintiff alleged difficulties with his memory, as well as understanding and following instructions.[45] In reaching the conclusion that Plaintiff had only moderate limitations in this area, the ALJ pointed to the function report Plaintiff prepared.[46] The ALJ noted that report was thoroughly completed and included statements from Plaintiff that he could follow written instructions very well and can follow spoken instructions unless they are interrupted or there is a long period between them.[47] The ALJ further noted his observations of Plaintiff during the hearing, where he was able to follow along with the proceedings, answer questions, and to provide explanations when asked. The ALJ also relied on the report completed by Dr. Rosengren.[48] Based on testing performed, Dr. Rosengren opined that Plaintiff would have minimal limitations in understanding, carrying out, and remembering simple, one step instructions, but would have moderate limitations with more complex instructions.[49]

---

[43] *Id.* § 404.1520a(d).
[44] *Id.* § 404.1520a(e)(4).
[45] R. at 20.
[46] *Id.* at 257–64.
[47] *Id.* at 262.
[48] *Id.* at 593–99.
[49] *Id.* at 598.

The ALJ next found moderate limitations in interacting with others. The ALJ noted that Plaintiff claimed difficulty in getting along with others, including family, friends, and neighbors. In contrast, the ALJ noted that Plaintiff's work as a grocery store courtesy clerk—where Plaintiff bagged groceries and took the groceries to the customer's car—necessarily involved some degree of interacting with others. The ALJ also pointed to Plaintiff's social activities, including mountain biking and snowboarding, as well as his weekly therapy sessions, as activities that involved some degree of interaction with others. The ALJ further relied on Dr. Rosengren's report wherein he stated that while Plaintiff was initially anxious, he warmed up quickly and his mood seemed to level out.[50] Similar to the ALJ, Dr. Rosengren found that Plaintiff would be moderately limited in maintaining effective social interactions with others, including supervisors, coworkers, and the public.[51]

In finding moderate limitations in concentrating, persisting, or maintaining pace, the ALJ noted that Plaintiff indicated he had difficulty completing tasks and concentrating. However, Plaintiff also stated that he could finish what he started (such as a conversation, chores, reading, or watching a movie) unless interrupted or he started something else.[52] Plaintiff also stated that he played video games "very well" and "all the time."[53] The ALJ concluded that these activities required some degree of concentration and focus. The ALJ further pointed to Dr. Rosengren's report where he noted that Plaintiff was able to perform serial threes without error and was able

---

[50] *Id.* at 596.

[51] *Id.* at 598.

[52] *Id.* at 262.

[53] *Id.* at 261.

to spell "world" forward and backward.[54] Dr. Rosenberg similarly opined moderate limitations in Plaintiff's ability to sustain focus and concentration.[55] From this evidence, the ALJ concluded than Plaintiff had no more than a moderate limitation in this area.

Finally, with respect to adapting or managing oneself, the ALJ found moderate limitations. While Plaintiff described some difficulty in his personal care, such as forgetting to wash his hair and requiring help with cutting his hair and beard, he also stated that he has no problem dressing, bathing, feeding himself, and using the toilet.[56] Dr. Rosengren similarly noted that Plaintiff's grooming and hygiene were appropriate.[57] The ALJ also relied on Plaintiff's ability to work part-time as evidence that Plaintiff had the ability to adapt to a routine work setting. Based on this, the ALJ concluded that Plaintiff had only a moderate limitation in this area.

Plaintiff takes issue with the ALJ's analysis. Plaintiff points out that he has never lived on his own and has never obtained a driver's license. He also points out that there is little evidence that he engages in recreational activities, let alone that he does so on a regular basis. With respect to the ability to complete the function report, Plaintiff notes that the report has misspelling and cross-outs, and it is clear that he had help filling out the form from his mother. Plaintiff also notes that he has received accommodations at both work and school. Plaintiff also points to

---

[54] *Id.* at 597.
[55] *Id.* at 598.
[56] *Id.* at 258.
[57] *Id.* at 596.

evidence that he does have difficulty taking care of his personal needs, including hygiene and preparing meals.

Contrary to Plaintiff's suggestion, the ALJ did not ignore this evidence. Instead, the ALJ did not give this evidence the weight Plaintiff contends it deserves. In doing so, Plaintiff invites the Court to re-weigh the evidence to conclude that the ALJ should have found Plaintiff's mental impairments more limiting. However, the Court cannot reweigh the evidence. Instead, the Court's role is to determine whether the ALJ's findings are supported by substantial evidence. Based upon a review of the entire record, the Court concludes that they are. While Plaintiff is correct that there is evidence supporting additional mental limitations, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."[58] Therefore, reversal is not required on this ground.

B.  MEDICAL OPINION EVIDENCE

Plaintiff next argues that the ALJ erred in evaluating the medical opinion evidence. An ALJ is not required to defer to or give any specific weight to medical opinions or prior administrative medical findings.[59] Rather, the ALJ considers them using the criteria in 20 C.F.R. § 404.1520c(c): (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors tending to support or contradict a medical opinion or prior

---

[58] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[59] 20 C.F.R. § 404.1520c(a).

administrative medical finding.[60] The most important criteria for determining persuasiveness are supportability and consistency.[61]

The ALJ must articulate "how persuasive [he or she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record."[62] The ALJ must explain how they considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings, but they are generally not required to explain how they considered other factors.[63] Social Security Ruling 96-8p emphasizes that "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."[64] "The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence."[65]

A. Kyle Elder, Ph.D.

Dr. Elder conducted a psychological evaluation on November 20, 2019.[66] Dr. Elder diagnosed autism spectrum disorder, persistent depressive disorder, and specific learning disability with impairment in reading comprehension and math fluency. Dr. Elder also provided

---

[60] *Id.* § 404.1520c(c).

[61] *Id.* § 404.1520c(a), (b)(2).

[62] *Id.* § 404.1520c(b).

[63] *Id*. § 404.1520c(b)(2).

[64] SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

[65] *Id.*; *see also Givens v. Astrue*, 251 F. App'x 561, 568 (10th Cir. 2007) ("If the ALJ rejects any significantly probative medical evidence concerning [a claimant's] RFC, he must provide adequate reasons for his decision to reject that evidence.").

[66] R. 579–92.

a number of recommendations aimed at "planning for [Plaintiff's] future that are consistent with his intellectual, academic, and mental health functioning."[67] These recommendations included things like medication, therapy, and additional social interaction.

The ALJ found Dr. Elder's evaluation unpersuasive. The ALJ stated that Dr. Elder's recommendations were "not in our terminology."[68] The ALJ also stated that he did not need to provide articulation for Dr. Elder's statements that did not state what Plaintiff can do despite his impairments.

Under the regulations, "[a] medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in certain abilities.[69] However, "general statements about [Plaintiff's] prognosis [are] not a 'medical opinion' because they [do] not provide evidence concerning [his] ability to perform the specific demands of work activities."[70] Similarly, generalized recommendations are too vague to constitute a medical opinion.[71]

In his evaluation, Dr. Elder provided a number of recommendations and suggested interventions. However, these generalized statements do not provide evidence of what Plaintiff could do despite his impairments.[72] Because Dr. Elder's evaluation did not constitute a medical

---

[67] *Id.* at 579.

[68] *Id.* at 31.

[69] 20 C.F.R. § 404.1513(a)(2).

[70] *Staheli v. Comm'r, SSA*, 84 F.4th 901, 907 (10th Cir. 2023).

[71] *Id.*

[72] *Id.*; *see also Zander P. v. Kijakazi*, No. 1:22-cv-00020-DAO, 2023 WL 2188453, at *5 (D. Utah Feb. 23, 2023) (stating that an "evaluation consist[ing] of clinical observations, test results, diagnoses, and treatment recommendations" did not "qualify as medical opinion evidence under agency regulations").

opinion, the ALJ was not required to evaluate it.[73] Dr. Elder's statements are far different from those in the cases cited in Plaintiff's Reply.[74] In both of those cases, the medical providers offered opinions that expressed work-related limitations.[75]

Plaintiff argues that the ALJ's evaluation of the state agency consultants' opinions demonstrates it was error to not evaluate Dr. Elder's statements. But this argument fails to recognize the distinction between medical opinion evidence and prior administrative medical findings. Though both are evaluated using the same criteria,[76] they are defined differently. As stated, "[a] medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in" certain abilities.[77] While a prior administrative medical finding is "a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review . . . in your current claim based on their review of the evidence in your case record."[78] Thus, under the regulations the ALJ was required to articulate the persuasiveness of the prior

---

[73] *Staheli v. Kijakazi*, No. 1:20-cv-00159-JCB, 2021 WL 5495694, at *4 (D. Utah Nov. 23, 2021).

[74] Docket No. 18, at 6–7 (citing *Bryan S. v. Kijakazi*, No. 6:21-cv-00972-MK, 2022 WL 3211621, at *3 (D. Or. Aug. 9, 2022); *Cynthia R. v. Kijakazi*, No. 21cv1612-BAS(LR), 2023 WL 375357, at *8 (S.D. Cal. Jan. 23, 2023)).

[75] *Bryan S.*, 2022 WL 3211621, at *3 (medical opinion stated that the plaintiff's "psychiatric problems seriously limit his ability to concentrate well enough to work in a job"); *Cynthia R.*, 2023 WL 375357, at *8 (treating physician stated opinion that the plaintiff's "symptoms were sufficiently serious to prevent her from working regularly").

[76] 20 C.F.R. § 404.1520c(b).

[77] *Id.* § 404.1513(a)(2).

[78] *Id.* § 404.1513(a)(5).

14

administrative medical findings, but he was not required to do so as to Dr. Elder's statements because they were not medical opinions. As a result, there is no error.

Kent Rosengren, Psy.D.

Dr. Rosengren evaluated Plaintiff on April 4, 2022.[79] Dr. Rosengren diagnosed autism spectrum disorder, ADHD, unspecified anxiety disorder, and unspecified depressive disorder. Dr. Rosengren opined that Plaintiff had minimal limitations in his ability to understand, carry out, and remember simple, one step instructions; moderate limitations to work with complex, multi-step instructions; moderate limitations in his ability to focus and concentrate; marked limitations in his ability to persist in work-related activities at a reasonable pace; moderate limitations in maintaining effective social interactions with others, including supervisors, coworkers, and the public; and marked limitations in his ability to deal with and adapt to the normal pressures of a competitive work environment.

The ALJ found Dr. Rosengren's opinions partially persuasive. In particular, the ALJ found that Dr. Rosengren's assessment of marked limitations regarding Plaintiff's employment capabilities and ability to deal with and adapt to normal pressures of a competitive work environment were not fully supported by Dr. Rosenberg's evaluation and were not consistent with the other record evidence. The ALJ noted that in his report, Dr. Rosenberg stated that Plaintiff was open, engaged, and cooperative and, while initially anxious, he warmed up quickly. The ALJ also pointed to Plaintiff's part time work as demonstrating that Plaintiff could adapt to the normal pressures of a competitive work environment.

---

[79] R. at 593–99.

Plaintiff argues that the ALJ erred in considering Plaintiff's work performance, noting that Plaintiff only works three days per week and stated that he needs to take time off in between those days. While Plaintiff's work did not amount to substantial gainful activity, it is evidence that could support a finding that Plaintiff is "able to do more work than [he] actually did."[80] Thus, the ALJ could properly consider Plaintiff's work history in finding that the marked limitations opined by Dr. Rosenberg were not persuasive. The ALJ articulated why he found Dr. Rosenberg's opinions partially persuasive, and that evaluation is supported by substantial evidence.

David Oakden, LCSW

Mr. Oakden submitted a letter dated February 6, 2023.[81] Mr. Oakden stated that he had seen Plaintiff in therapy for the previous three years. Dr. Oakden stated that Plaintiff could not budget effectively, complete activities of daily living without prompting, and that he struggles to maintain a consistent work schedule. Mr. Oakden stated that Plaintiff's anxiety and depression limits his ability to interact with others.

The ALJ found Mr. Oakden's opinions unpersuasive.[82] The ALJ first stated that as a licensed clinical social worker, Mr. Oakden was not an acceptable medical source. But the ALJ went on to state that Mr. Oakden's opinions were not supported, as the record contains no treatment records from Mr. Oakden's treatment of Plaintiff. The ALJ also found that Mr. Oakden's opinions were not consistent with the medical evidence in the record.

---

[80] 20 C.F.R. § 404.1571; *see also id.* § 404.1529(c)(3) (stating that the agency will consider evidence of a claimant's prior work record in evaluating symptoms).

[81] R. at 682.

[82] *Id.* at 31–32.

Mr. Oakden is a medical source,[83] and the ALJ was obligated to evaluate his opinions.[84] The ALJ did so, and his evaluation is supported by substantial evidence. The ALJ correctly noted that the record was devoid of treatment notes from Mr. Oakden for the three years that he treated Plaintiff. This lack of treatment notes is certainly relevant to the question of supportability,[85] and provides support for the ALJ's decision to find Mr. Oakden's opinions unpersuasive.

As for consistency, the ALJ noted that there was sparse medical documentation that would support the type of disabling symptoms opined by Mr. Oakden. This finding is supported by substantial evidence, including Plaintiff's lack of treatment and his statement that his depression was improving.[86] While there is evidence to the contrary, the ALJ's treatment of Mr. Oakden's opinion is supported by substantial evidence.

IV.  CONCLUSION

Having made a thorough review of the entire record, the Court affirms the Commissioner's decision.

DATED this 12th day of April, 2024.

BY THE COURT:

PAUL KOHLER
United States Magistrate Judge

---

[83] *See* 20 C.F.R. § 404.1502(d).

[84] *Id.* § 404.1520c.

[85] *See, e.g., Hubbard v. Comm'r of Soc. Sec.*, No. 4:20-CV-00588-BP, 2022 WL 196297, at *4 (N.D. Tex. Jan. 21, 2022) (finding that the ALJ correctly relied on a lack of treatment notes in finding a doctor's opinion unpersuasive); *Waddell v. Saul*, No. 9:20-CV-02425-MHC, 2022 WL 16716300, at *6 (D. S.C. Feb. 14, 2022) (same).

[86] R. at 594.